PAYNE v. STATE.

## Opinion delivered July 7, 1924.

1. BRIBERY—SUFFICIENCY OF EVIDENCE.—In a prosecution of a county judge for accepting a bribe for letting a certain bridge contract, evidence that the contract was let in an irregular manner and was improvident, and that the contractor was benefited by not being required to comply with the specifications, while competent, was insufficient of itself to prove that the contract was the result of a corrupt agreement.

2. BRIBERY—EVIDENCE.—In a prosecution of a county judge for accepting a bribe from T. for letting a bridge contract to a certain contractor, evidence that T. stated that accused "is hardboiled, and wouldn't turn a wheel until the money is in his hands," *held* insufficient to show a corrupt agreement between defendant and T.

3. CRIMINAL LAW—STATEMENT OF CO-CONSPIRATOR.—Any adverse statement of a co-conspirator made during the execution of the conspiracy, in the absence of the other conspirators, is admissible against them, but not so if made after the consummation of the conspiracy.

4. CRIMINAL LAW—STATEMENT OF FELLOW-CONSPIRATOR.—In a prosecution of a county judge for accepting a bribe from T. for letting a bridge contract to T.'s company, *held* that statements made by T. after the contract had been let, and in defendant's absence, that T. had agreed to pay defendant $6,000 as a bribe to secure three bridge contracts for his company, and that accused let him off for $5,000, were inadmissible, being hearsay.

Appeal from Sebastian Circuit Court, Greenwood District; *John E. Tatum*, Judge; reversed.

*Hill & Fitzhugh, Bates & Duncan*, and *Jno. F. Clifford*, for appellant.

*J. S. Utley*, Attorney General, and *John L. Carter*, Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted in the circuit court of Scott County for accepting a bribe of $2,000 from Bob Tate for letting a contract to the Southern Road & Bridge Builders, Inc., to build a bridge over Fourche River at Murphy Ford, in said county. The indictment, omitting formal parts, is as follows:

"The grand jury of Scott County, in the name and by the authority of the State of Arkansas, accuses the

defendant, Tom Payne, of the crime of bribery, committed as follows, to-wit: The said defendant, in the county and State aforesaid, on the 7th day of September, 1918, being then and there the duly and legally elected and the acting county judge of Scott County, Arkansas, did wilfully, unlawfully, corruptly and feloniously accept and receive from Bob Tate, then and there being, $2,000 lawful money of the United States of America, of the value of $2,000, as a bribe for the purpose of inducing and procuring him, the said Tom Payne, as such county judge, to let the contract for the building of a certain bridge over Fourche River at Murphy Ford, in Scott County, Arkansas, to the Southern Road & Bridge Builders, Inc., of Little Rock, Arkansas, and the said defendant, Tom Payne, unlawfully, corruptly and feloniously accepted and received said bribe from said Bob Tate for letting said contract to said Southern Road & Bridge Builders, Inc., aforesaid, against the peace and dignity of the State of Arkansas.''

A change of venue was taken to Sebastian County, Greenwood District, where appellant was tried, convicted, and adjudged to pay a fine of $2,000 and to serve a term of two years in the State Penitentiary as punishment therefor, from which judgment an appeal has been duly prosecuted to this court.

The State sought to convict appellant upon the theory that the contract for building said bridge was let to the Southern Road & Bridge Builders, Inc., through a conspiracy between Bob Tate and appellant. In an attempt to establish the conspiracy, the State introduced evidence tending to show that the contract was let in an irregular manner; that it was an improvident contract, and that the contractor was not required to build the bridge in accordance with the plans and specifications, which liberality redounded to its benefit and to the detriment of the county. The gist of the bribery charge was accepting the money for an evil or malevolent purpose. While the testimony above referred to was competent as tending to establish the charge, it was not sufficient

within itself upon which to base an inference that the contract was the result of a bad motive or corrupt agreement between Tate and appellant. All of it could have been attributed to negligence on the part of appellant. The State attempted to supplement this character of testimony by hearsay statements made by Tate and appellant to John Harris, and a statement made by Tate to Lee Pile, when issuing warrants to him, to the effect that appellant "is hard boiled, and wouldn't turn a wheel until the money is in his hands." The statement to Pile was indefinite and did not refer to any specific corrupt agreement. It may have had reference to pay for something he expected appellant to do in the future, and have had no relation whatever to a corrupt agreement which had not been consummated concerning the bridge contract. Had this statement been connected up so as to show that it related to the letting of the bridge contract, the jury might well have inferred from it, in connection with the other testimony, that a corrupt agreement existed between Tate and appellant which was then in the course of completion or consummation. Any adverse statement of a co-conspirator during the execution of a conspiracy, in the absence of the others, is admissible against them, but not so if made after the consummation of the conspiracy.

The hearsay statements of Bob Tate, in the absence of appellant, as testified by Judge A. F. Smith, to the effect that he (Bob Tate) had agreed to pay appellant $6,000 as a bribe to secure three bridge contracts for his company, and that appellant let him off for $5,000, and that at one time appellant threatened to kill him unless he paid the whole amount, were inadmissible for the reason that they were hearsay, and that they were made after the consummation of the conspiracy. Judge Smith testified that he heard John Harris say that Bob Tate told him that he had bribed appellant, and that the statement was made by John Harris during an investigation of the affair by appellant's successor in office. The hearsay statement of appellant to the same effect was inad-

missible, for the reason also that it was strictly hearsay evidence.

On account of the admission of the hearsay evidence, as well as the insufficiency of the other evidence to support the verdict, the judgment is reversed, and the cause is remanded for a new trial.